Dear Mr. Kruse:
This official opinion is issued in response to your request for a ruling received on May 17, 1986, setting forth the following questions:
1. For purposes of registration and voting in a beef merchandising council referendum pursuant to § 275.330(3), RSMo Supp. 1984, should the numbers of cattle purchased and sold by order buyers, traders, dealers, or sale barn owners in the ordinary course of their business be included in the total of beef production, a majority of which must be represented by a majority of those voting in favor of adoption of the petition to establish the Council?
2. In the event that the petition referred to in question No. 1 is adopted, are order buyers, traders, dealers or sale barn owners required to pay fees for cattle purchased and sold by them in the ordinary course of their business?
Section 275.300, RSMo Supp. 1984 provides:
 (5) "Handler", any person who engages in the selling, marketing, or distribution of any agricultural commodity on a wholesale basis which he has purchased for resale or which he is marketing on behalf of a producer, and shall include a producer who distributes any agricultural commodity which he has produced.
* * *
 (7) "Producer", any individual, firm, corporation, partnership, or unincorporated association engaged within this state in business producing for market any agricultural commodity in commercial quantities.
Section 275.330, RSMo Supp. 1984 provides:
 3. If a majority of the votes cast are in favor of adoption, and if those producers voting in favor of adoption represent a majority of the production of all registered producers casting votes, the petition is adopted.
Section 275.350, RSMo Supp. 1984 provides:
 Fees, collection of, disposition. — 1. Any fee imposed under the commodity merchandising program shall be collected by the director whether directly from the producers or indirectly from the handlers or processors as stipulated by the provision of the commodity merchandising program.
Section 276.605, RSMo Supp. 1984 provides:
 (2) "Engaged in the business of buying or selling in commerce livestock", sales and purchases of greater frequency than the person would make in feeding operation under the normal operation of a farm, if the person is a farmer. If the person is not a farmer he is a dealer engaged in the business of buying or selling commerce livestock:
* * *
 (4) "Livestock dealer", any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser;
Section 275.330(3), RSMo Supp. 1984, provides that a majority of producers representing a majority of beefproduction must vote in favor of adoption of the beef merchandising council petition to result in its adoption. Section 275.300(7), RSMo Supp. 1984, defines "producer" as an entity engaged within the State of Missouri in businessproducing for market any agricultural commodity, in this instance cattle.
The first question presented herein is whether the cattle purchased and sold by order buyers, traders, dealers, or sale barn owners in the ordinary course of their business constitutesproduction of cattle by producers within the meaning of § 275.300. The answer to this question is guided by another statute § 276.605 (4) which defines "livestock dealer" as any person engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser. Furthermore, such sales and purchases are of greater frequency than the person would make in a feeding operation under the normal operation of a farm.
It is clear that the term "livestock dealer" is a general term meant to embrace the other categories of cattle dealings denominated in your question, e.g. an order buyer who buys as an agent for a purchaser, etc. It is also clear that § 275.300, RSMo Supp. 1984, differentiates a producer from a "handler" who merely engages in the selling of cattle on a wholesale basis. The term "handler" therefore includes "livestock dealers" within the meaning of § 276.605.
Further insight into the distinction between production and marketing functions in the cattle business is obtained by a review of pertinent sections of Harl's treatise AgricultureLaw, vol. 12, § 114.02[1]:
 The production and marketing of livestock, most importantly cattle and swine, represent one of the most significant segments of American agriculture. State regulation of agriculture affects livestock production in two main ways: first, as it relates to the control of animal diseases; second, as it relates to the various stages of marketing livestock. . .
 Legislation affecting animal markets consists of two main types. The first type relates to the sale of live animals. Within this category are included state legislation relating to the licensing of livestock dealers, the regulation of public livestock auctions, and the control of the movement of live animals. The second type of animal marketing legislation relates to the conversion of live animals into meat products for human consumption. . . .
The author then proceeds to describe the various state dealer and auction statutes in the United States. These sections thereby elucidate further what is apparent from a reading of the Missouri statute sections referred to hereinabove, namely, that in interpreting the term "producing for market", it is the order buyers, traders and other livestock dealers which are and constitute the market itself for which the producer produces. It follows that the numbers of cattle purchased and sold pursuant to transactions in such a market are not includable in production totals, a majority of which is required by a corresponding majority of producer votes for adoption of a beef merchandising council petition.
Our attention is drawn to language contained in article eight of the petition, which purports to define producer as the legal owner of one or more head of cattle. Elsewhere in the petition reference is made to cattle "produced and/or sold." While obviously incomplete, we note that such "definition" is not incompatible with or contradictory to the statutory definition, which, of course, cannot be contravened or abrogated merely by the presence of somewhat different language in a petition.
It is apparent that emphasis is being placed on legal ownership of cattle, to distinguish situations of custodial management of cattle. Producers cannot produce cattle for market except through the conveyance of some interest legal or equitable in the animals they raise. In the context of this petition the definitional language of article eight must be deemed instructive in nature and not self-limiting in intent.
In response to your second question, we refer to § 275.350, RSMo Supp. 1984, which directs that the fee imposed under the merchandising program be collected either from the producer directly or from the handler indirectly. Since we have concluded that a handler is not a producer, we conclude also that a fee should not be collected from both the producer and a handler or handlers who comprise the market. A handler may be required, in appropriate circumstances which the Director of Agriculture may identify, to collect the fee on his behalf, but no additional fee is to be collected from him or upon any subsequent wholesale transaction.
It is the conclusion of this office that handlers including order buyers, traders, dealers and sale barn owners are not producers within the meaning of § 275.300 and § 275.330(3), and the numbers of cattle involved in their marketing transactions are not includable in production totals applicable to § 275.330(3). Further, transactions in which title to cattle merely changes hands in the marketing process are not subject to collection of beef merchandising council fees.
Sincerely yours,
 WILLIAM L. WEBSTER Attorney General
dk